Preserve three minutes for rebuttal, please. You may do so. Just watch the clock, counsel. Good afternoon. Gonzalo Martinez for Appellant Karin Krushwitz, who is here today with us in the courtroom. Your Honors, the lower court erred by entering summary judgment against my client in at least two separate ways. First, she – first, the court relieved the university of its summary judgment burden and ordered my client to prove up her declaration, even though it created factual disputes. Two, the court ignored evidence that equitable tolling preserved my client's claims. For these reasons, the summary judgment should be reversed. First, the university never carried its summary judgment burden. The university's moving papers did not conclusively negate or foreclose the possibility that Krushwitz's filings were timely. Your Honors, this is important because unlike most summary judgment cases where a defendant argues that a plaintiff has insufficient evidence supporting her claim, here the university moved under the more stringent standard of adequies. Now, in Nissan, this court read that case as requiring a moving party to foreclose the possibility of a claim or to negate an essential element, and here the university did neither. It should reject the university's argument that its general attack on untimeliness is sufficient to carry its burden. The reason that is is because Ms. Krushwitz's complaint admitted that her claims were untimely and that she needed equitable tolling. However, the university's motion did not put any of the elements of equitable tolling at issue. Roberts. Counsel, what does the Arnold case tell us? Let's see. Arnold v. United States? On this issue, yes. Essentially, in Arnold, the court found, this court found that an EEOC charge or a Title VII gender discrimination claim did not toll State statute of limitations, did not toll the statute of limitations for State tort claims. Okay. And how does that apply here? Or not apply? I mean, it's been raised. Right. Our argument would be that it doesn't apply here because the claims in that case involve different wrongs. The claims there, the EEOC charge dealt with discrimination in the workplace, whereas the State tort law claims, which were assault, false imprisonment, affliction of emotional distress, and battery, all involved bodily or emotional injury. So the claims there were truly separate. They involved two different primary rights under California's primary rights theory. May I continue? Certainly. I'd like to go back to your first argument to see if I understand it correctly. It seems to me it's an argument about whether the motion for summary judgment in its original form was sufficient and chooses to disregard everything that happened in the district court after that, as the district court tried to pin down particular dates. Is that correct? Essentially, the argument would be that at the time that the court ordered additional briefing, it really — our position is that the motion actually should have been denied because — Your client didn't object, did she? My client is — my client represented herself per se. That's an answer yes or an answer no. I'm getting to the answer. My understanding from reading the transcript is that she acquiesced in supplying additional documents. I don't know that she acquiesced that the university should be relieved of its summary judgment burden. But the district court obtained additional information. What sense is there in disregarding the additional information if, in fact, it could pin down a specific date? There are at least two reasons. One is that if the university didn't meet its summary judgment burden, my client didn't have any obligation to turn over evidence. But by the time the district court has this in front of it, if, in fact, it's uncontroverted that a given date would bar the claim, what sense would there be for the court to say, but because you didn't include that in the first motion, I'm going to disregard this fact that I now know, and as a result, we're all going off to a trial that's pointless? Our position is that the magistrate judge ordered my client to supplement her declaration, basically to corroborate it, and — which she did. And she argued, to the best of her abilities, what the evidence represented. However, the district court misread some of that evidence, unfortunately, and decided factual conflicts against my client. Kennedy, getting to the merits I understand, but I'm trying to really get by the first argument, which seems to me to be a procedural one and not one that strikes me as very persuasive. If you want to contest the evidence, question whether there were uncontroverted facts that support the conclusion. That I understand and I hope we'll get to. But I don't understand why the district court should close its eyes to facts that are developed in subsequent submissions just because the first submission by the university may have been insufficient in some fashion. I understand your concern, and our — the rest of our brief did address the underlying evidence, and you are correct that the initial argument is a purely procedural one. And I'll let you get to the merits. Fair enough. So, Your Honors, even if the university shifted its burden, which we contended did not, Ms. Krushewitz presented evidence that equitable tolling should have preserved her claims. And there are at least three significant parts here. The first is that cognitive dysfunction should have told all the filing periods. The second is that the EEOC charge should have told — should have been told by PAI, and that's Protection and Advocacy's bad legal advice. And the third is that her student claims were timely with correct application of equitable tolling. Now, I'll go back and fill some of this in. As to cognitive dysfunction, Your Honors, Ms. Krushewitz presented evidence that her ARA disease caused low blood flow to the brain, cognitive dysfunction, difficulty with memory and communication, which impacted her ability to file timely. This wasn't mere poor health, which is what the district court dismissed it as, but it impacted her ability to understand her rights. It would be inequitable to have an unrepresented litigant with this disability have to navigate all of the filing requirements. Now, the university — The argument doesn't seem to have much to do with — or the difficulty with cognitive dysfunction as with not knowing what the deadlines were. What's the connection there? Your Honor, they're related because the cognitive dysfunction limited Ms. Krushewitz's ability to understand material, and there's evidence in the record to that effect. She was only able to focus or concentrate for 40 minutes at a time. And again, she represented herself. So she was navigating the complicated, you know, statutes at issue, the charges, the various filing times at issue. And to the best of her ability, she did so. But her disability also impacted her ability to know what to do and to do it correctly. Now, equity doesn't require that she sit on her rights. It requires that she, to the best of her ability to understand her claims, try to pursue them. Now, second, the EEOC charge should have been told by PAI's bad legal advice. Now, Ms. Krushewitz presented evidence that she did not actually know the EEOC, and also that she had no constructive knowledge because protection and advocacy failed to tell her. After she was dismissed from the university in January 31 of 2005, she was not represented by any attorney for purposes of these discrimination claims. So she turned to Protection and Advocacy, which is a legal services agency, as I understand it, with a duty to inform the disabled about their rights under federal law. So PAI dutifully advised her regarding her student rights, but they didn't tell her to file an EEOC charge. And that advice came during the 180-day period to file her EEOC charge. That's on March 30, 2005. Was she, was PAI, in effect, serving as her attorney? What's interesting about that is that they, the way we would couch it is PAI was her attorney for the limited purpose of advising her about her discrimination claims, but they weren't effectively acting as counsel, because they, they weren't acting as counsel in the way that she could be charged with constructive knowledge of the law, because they didn't fully advise her of what her rights were or what she should do to perfect them. Now, Your Honor's counsel, yes. Can you hear me? Yes. Is there any evidence that, I'm sorry, is there any evidence that PAI even knew that she was bringing an employee claim? I mean, there's not any evidence in the record as far as I could tell that they were even aware of that. Your Honor, we think it's a fair inference. It can be reasonably inferred from the record, because what's interesting about graduate students is that a graduate student has a dual status. She is both a student of the university and also an employee, because she is either a researcher or a teacher. So that would be the fair inference from the record, but other than that, unfortunately, we will concede there isn't much that's very strong except for her allegation and her complaint that she holds a dual status. If that agency actually served as her counsel and appeared, would attorney failure be sufficient to get around the limitations problem? Under this Court's decision of Iturribarria, it should be. And I understand that Iturribarria arises in the immigration context, but it applies general equitable principles. And there, this Court held that an attorney's error might be sufficient under equity to excuse a plaintiff's inability to file on time, so long as that party acts diligently to find out about the error. Now, Your Honors, as soon as she, Ms. Kreschowitz, found out about the EEOC charge or the ability to file before the EEOC, she did so, and that's in spring of 2009. The district court relied on Santa Maria, which is distinguishable, because that case involved a represented plaintiff, and also because the plaintiff and the lawyer there had information pertaining to the claim during the filing period and still failed to file timely. Here, Ms. Kreschowitz did not know about the EEOC remedy until well after the 180 days. Now, as to the student claims, and that's the Title II ADA and Section 504 claims, there are two key time periods at issue. The first is chancellor review. Ms. Kreschowitz's declaration stated that she had been readmitted by the prior chancellor. And on summary judgment, that should have been deemed true, so that when she later petitioned for the chancellor for readmission, that was a reason, that she reasonably believed, based on her own experience, that that was a remedy available to her. Now, as to the EEOC investigation, this court has held that California law allows tolling when a plaintiff pursues one remedy among many, as long as it vindicates the same wrong and it does not violate federal policy, and that's under Lucchesi and Davidson. And both of these requirements are met here, Your Honor. The employment and student claims both address the same wrong, which is being free from discrimination from a public university. And they are based on similar facts, again, based on this dual status. Lucchesi said different laws, different procedures, or different remedies should not prevent tolling. Tolling here violates no federal policy. The university never identified one. And there is none that's violated. Davidson identified uniformity, federalism, and deterrence as relevant policies. As to uniformity and federalism, because federal law is to apply state law, there is no requirement of national uniformity. So it's okay that things differ among the states. As to deterrence, we submit that it supports the federal policy. Yes, Your Honor. Counsel, if the EEOC charge itself was untimely, that would then doom the tolling argument on the student claims, would it not? Your Honor, it should not, because the notice function was fulfilled in this case. And that is because the university has admitted that since 2005, it has held all of the evidence relating to Ms. Krushwitz's claim. And that's in 2005. So when the EEOC charge itself was filed in 2009, it's a reminder that that claim is still out there and alive. I don't know if I fully answered your question, or may I move on? Very well. So, Your Honors, Johnson v. Railway is distinguishable because it didn't apply California's broad tolling law. Again, Davidson and Lucchese rejected the argument that independent avenues for relief preclude tolling under California law. What matters is whether the claims address the same wrong, which they do in this case. Counsel, you're down to about a minute. You indicated you wanted to reserve some time. Yes, I will reserve the rest of my time. Thank you. You may do so. We'll hear from the university. I hope you can see me behind this tall post. If you could pull the microphone down a little closer to you. Thank you, Counsel. Thank you. And may it please the Court, Your Honor. I'm going to start with the merits and work my way back. The first ground that Counsel talked about for applying tolling to this was the mental impairment issue. The law on this issue is pretty clear. To have mental impairment actually lead to tolling, it has to be really severe. It can't just be someone that is forgetful or has trouble for a few hours of the day. It has to be so severe that you cannot rationally or factually understand the need to file and you cannot physically make that happen. What's your best case on that? Lucent Technologies is a very good case on that because it's very similar to this. In Lucent Technologies, the plaintiff made the same argument about mental impairment and the Court looked at the behavior of the plaintiff and made a determination about whether that behavior evidenced the kind of impairment that the law required. And in that case, the Court said it didn't because that plaintiff was able to completely participate and advance and protect her interests. In this case, although Counsel has told us that Ms. Krestrich was so mentally impaired that she could not file an EEOC claim within 180 days, look what she did All of this is undisputed in the record. She spent a year continuing her chemistry PhD classes while her university appeal was pending and while she was suffering from this disease. She managed the entire appeal process through the University of California. She filed complaints with the OCR, with the Department of Justice. She took all of those through multiple steps of appeals, including to Washington, D.C. She went to the Attorney General. She went to Senator Feinstein. She went to Senator Parada. She filed the complaint in this lawsuit. She participated in this litigation. She filed an opposition to this motion. On the face of it, the argument that Ms. Krestrich was so mentally impaired that she could not understand that an EEOC charge had to be filed within 180 days is just belied by the undisputed evidence. And she also takes the position she's capable of completing her PhD work in chemistry, which also belies the statement that she's too mentally impaired to file the EEOC charge. Counsel also argued that the EEOC filing was not that she didn't know that she had to do it. But there is no law, none that has been cited to us and that I have found that says that just because a person does not know about the filing deadline for the EEOC charge that they don't have to do it. The legislature did not carve out an exception to that statute that you have to file it within 180 days unless you're unrepresented by counsel or just don't know. That's not the law. It would, in fact, mean any unrepresented claimant would say, I didn't know, and then the time limit in the statute would be essentially eviscerated. And most people who are filing EEOC claims are unrepresented at that stage anyway. The law says it's not that you don't know. It's not whether you know about the requirement. It's whether you know that you have a claim within the limitations period. That's what the tolling test is. Obviously, Ms. Krushwitz knew she had a claim. She knew it from the beginning. She made the argument to the university immediately that she was disabled. On terms of the bad advice that the PAI gave to Ms. Krushwitz during her consultation with them, you know, they weren't concerned with her employee claim. That was an organization that was giving her feedback and consultation on the student claims through the OCR process. But they had no duty, and there's no authority before us that would tell us that they had a duty to advise her of a completely unrelated claim, nor did they. It's not that they gave her bad advice. They didn't tell her, this is what you do, and she did it and it was wrong. It was they were just silent on it. And she has an obligation to diligently pursue her legal remedies and figure out what she needs to do to protect her claim. So that argument really is. The argument is that dealing with grad students, it's not a tough inference that the grad student may be a graduate assistant or an employee of the university as well. Do you have any sense of what proportion of the grad student population worked for the university in some fashion? I suspect it's pretty high. You know, I don't, but I would say that even if we made that assumption, that would not be enough of a factual dispute to get in the way of the summary judgment. I mean, who knows if she was even going to pursue an employment claim under Title VII. You could be a graduate student and pursue your university claims to reinstate your student status without ever proceeding under Title VII or employment action. So it's really a red herring, as we say. I want to talk a little bit about the requirements for equitable tolling, because counsel brought up this idea that they had provided notice to the university, and so therefore all of the tolling arguments apply. There are requirements for applying equitable tolling. There are three of them. The first one is you have to give notice to the defendant of the first proceeding. So the OCR would have been the first proceeding, the lawsuit the next one. Counsel argues that Ms. Crushwood gave the university notice of that because she knew in 2005 or 2006 that she was going to pursue this. That kind of a generic statement or influence or threat is not what is required. You need actual notice of the proceeding. It is undisputed in this record that the university never had notice of that OCR proceeding. The OCR didn't tell the university, which is typical because they didn't accept it. Ms. Crushwood didn't tell anybody. We didn't know. Ms. Hawthorne's declaration says the first time there was an inkling of that was when the EEOC claim was finally provided to the university in 2009, years after the fact, because that charge has a line in it that says something about the Department of Education complaints, but that's it. They didn't even know. When the university got that, it immediately sent out a request for information under the Freedom of Information Act to try to figure out what was going on. So the notice portion of that test was definitely not met. Now, the Court, on summary judgment, gave this to plaintiffs. To plaintiffs' benefit, the Court did not rely on the absence of notice, and the Court went ahead and applied tolling to these claims. That was an advantage, I think, to Ms. Crushwood's, and so it definitely worked. The Court was looking out for her best interests in that regard, probably, I would think, because she was proceeding improper. So the EEOC charge itself, putting aside the notice issue, say we get past that and we're going into the tolling on the EEOC charge. Your Honor made a great point. The EEOC charge was not timely. An untimely EEOC charge cannot be used to toll a civil lawsuit that's happening years later. There really is not much of a dispute about the untimeliness of this EEOC charge. We know it was filed on April 29, 2009, almost four years after Ms. Crushwood's was dismissed from the university. That's a lot longer than 180 days. The face of the charge says that the last act of discrimination happened on March 4, 2009. March 4, 2009. She had not been at the university for almost four years by that time. But on the face of the document that you filed with the EEOC, it appeared to be timely because the date on the face of the charge made it look timely. But there is no evidence in the record about what the EEOC did with that charge once it was filed. There's no evidence of an investigation. There's no evidence of any determinations of timeliness. There's no evidence of any kind of maneuvering on the merits of it. It was sitting in the EEOC. Sometimes things sit in the EEOC for a long time. It's just a practical reality of that government agency. The plaintiff argues on appeal that you have to infer the EEOC charge was timely because the Department of Justice issued the right to sue letter instead of the commission itself, which means the commission must have assumed that it was a timely charge. That is an inference that is not reasonably made. All we know, based upon the undisputed evidence, is the charge was filed, the right to sue letter was issued, and we don't know what happened in between. We don't even know if the EEOC realized that Ms. Crushwitz had been dismissed from the university program in 2005. So now we get to whether the trial court correctly applied tolling. As I said, the trial court, to Ms. Crushwitz's benefit, skipped over the notice requirements and applied tolling very generously. The trial court applied all of the University of California processes up through the time her appeal was denied in December of 2005. It tolled the entire OASIS. Kennedy. What about the petition to the Chancellor? Except the petition to the Chancellor. So let me talk about that. The appeal process at the University of California is well documented, and it's set forth in writing, and it is undisputed, and it's in the record. That process does not provide for any kind of review or appeal to the Chancellor. Once the university sent the letter to Ms. Crushwitz that it was a final determination, her appeal had been denied, that was it. She could go to the OCR, but you can't go to the Chancellor. That's the pulse. But in fact, she did go to the Chancellor before, and the argument is that the Chancellor granted relief before. Well, her declaration says a different Chancellor years before had a — the declaration says at the behest of the prior Chancellor, she was admitted. That's the declaration. I think there's a lot of evidentiary issues with that statement. Well, here we're on summary judgment, so to tell me there are evidentiary issues don't solve the problem. I agree. But I don't think because, even assuming it's true, even if a prior Chancellor had been involved in some way, and we don't know how, there's no evidence of how, some way sat on the committee or did something that eventually resulted in her readmission under this conditional program that she was in, it doesn't mean that when she is dismissed from the program now, that it creates a triable issue of fact to say, even though the process and the procedures for appeal of my dismissal don't allow it, I can go to the Chancellor and toll my time. I mean, a person could write to every administrator on the campus and argue that that was tolling their time. I mean, the procedures are very clear. Ms. Krushwitz knew about it. And it tells you exactly what you have to do. If the Chancellor were available to review every student's claim that they had some disciplinary action happened that they disliked, the Chancellor would never be able to run the university. So that's the answer. But the practical reality is, even if you include the time period of this Chancellor review, it adds 66 days. It's still time barred. We're still a long way from having these times be compliant. So it doesn't really matter. I have two minutes left, so I really need to talk about this idea that you can, as long as you have an EEOC filing, that you can toll any other unrelated claim that you have out there. That's really not the law. We've already talked about the filing, the untimeliness of the filing itself. But even if we get past that, there is no authority that says, if it's the same primary right, if it's a discrimination claim and you want to be free from discrimination, that an EEOC filing will toll any other separate and independent claims that you have as long as they arise out of this discrimination. The United States Supreme Court in Johnson v. Railway Express specifically dealt with this. This is a race discrimination case. It's the same primary right to be free from discrimination. They asserted Title VII and Section 1981 claims. It was the same facts. The Court held the EEOC filing does not toll the statute on the 1981 claims. You cannot sit on them. Congress did not intend to apply this administrative hurdles to the 1981 claim. There is no Federal policy that says you've got to hold up a 1981 claim and wait for your Title VII process, which the Court noted could take a really long time. Arnold, which Your Honor asked about at the beginning, confirms Johnson, and it specifically says Federal policy does not mandate equitable tolling, and Federal policy does not mandate that Title VII claims must go through that EEOC process before State law claims can be decided. It's just otherwise nothing would ever be decided. But in Johnson, Counsel, Counsel, in Johnson, weren't the — didn't the Supreme Court borrow or weren't the Court borrow Tennessee law, which was quite different than California law on this issue of similarity between claims? I mean, isn't there a real difference between this case and Johnson? I don't think so. I mean, California law and — is very similar to that. And the Court's just saying it doesn't have to — the Johnson Court actually said, well, State law is something we look at. We're not bound by it or married to it, and we still have to think about what the difference would be. And that is the case here. But I have to say, there's no California authority that would support the position that just because the Title VII EEOC charge was filed, that everything else gets put on hold. That California doesn't do that either. There's no primary right law in California that applies to equitable tolling. I don't know if Your Honor wants me to talk. I have 58 seconds left about some of the procedural stuff at the beginning. Actually, you're 58 seconds in. Isn't she over? Oh, I'm sorry. Welcome to the Federal Government. I can't see. I can't see the clock. There you go. Thank you very much. Thank you, counsel. Mr. Martinez, you have reserved some time. Your Honor, just a few quick points. So on mental impairment, the mental impairment in this case goes beyond mere forgetfulness. It goes to cognitive dysfunction and inability to process information. And that was documented in the evidence that Ms. Kreshewitz put in as to ---- But the problem is she was able to do other things during that time. That's correct, Your Honor.    We don't dispute that. We don't dispute that. Ms. Kreshewitz tried to the best of her abilities to prosecute her claims, and that goes to the second prong of equitable tolling. She's required to not sit on her rights. It doesn't mean that she was necessarily so mentally incapacitated that she had to do nothing. The standard under, I think, Johnson v. Lucent is that the impairment be so severe that a plaintiff cannot, and I'm paraphrasing here, rationally or factually understand the need to timely file. And we submit that there's evidence in this record that meets that standard. As to PAI's duty at ER 459, PAI lays out its duty. It's not limited to OCR claims, but broadly states that they will advise disability plaintiffs about their claims. Now, as to whether or not the EEOC charge was timely, counsel states that there's no evidence that the EEOC took on the claim. That's not true. Ms. Krushwitz's declaration at ER 199 states that the EEOC took my case, appealed it to UCB to readmit me, and they reviewed the case for 2 years, 2 1⁄2 years. Now, it's a reasonable inference from those 2 1⁄2 years that they must have known that the charge was untimely on a case. Counsel, on the tolling issue, does it even matter what the EEOC did or didn't do? Why does that even matter for our purposes? It matters because there is some evidence in the record that it is that the agency itself deemed it timely and that it deemed the claim worthy of its resources and that she may have had a viable claim. Does that matter to us? It should matter for the tolling, in part because it's evidence, again, that her claim that she is able to state a claim that the university had some notice that there was an EEOC charge out there and that the notice function was fulfilled in this case. Thank you, Counsel. Your time has expired. The case just argued will be submitted for decision and the Court will adjourn. All right. For this Court, this session has been adjourned.
judges: Adelman, O'scannlain, Clifton